UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PREMIERE, INC.                              CIVIL ACTION NO. 6:10-cv-0627

VERSUS                                          JUDGE HAIK

GBR EQUIPMENT, INC.                  MAGISTRATE JUDGE HANNA

## RULING AND ORDER

The defendant, GBR Equipment, Inc., did not participate in the preparation of the Rule 26(f) report in this case on the basis that the Notice of Bankruptcy filed by third-party defendant, Naknek Electric Association, Inc., operated to stay all of the proceedings pursuant to 11 U.S.C. §362.  Upon receipt of the plaintiff's Rule 26(f) inserts which set forth GBR's position, a Rule 16 conference was held by the undersigned to discuss the issue.  (Rec. Doc. 25).  At that conference, GBR maintained that the case was stayed as a matter of law, or alternatively, the court should order the case stayed under its discretionary authority.  (Id.) The undersigned ordered the parties to brief the issue, and having reviewed the evidence, arguments of counsel, and applicable law, finds that this case should not be stayed as to the claims of plaintiff against GBR.

### Background  Information

Premiere initiated this lawsuit by complaint filed on April 16, 2010.  In its complaint, Premiere alleged that GBR rented certain oilfield casing equipment from Premiere in June 2009 and then failed to pay for it.  Premiere seeks a judgment in the amount of the alleged unpaid balance.  Attached as exhibits to the complaint are copies of Premiere's invoices to GBR as well as copies of bills of lading evidencing transportation of the equipment from Premiere's location in New Iberia, Louisiana, to GBR in Alaska.  (Rec. Doc. 1-2, 1-3.)  It is undisputed that GBR used the casing equipment rented from Premiere on Naknek's King Salmon job in Alaska.  (Rec. Doc. 14 at ¶ 6).  Premiere characterizes this lawsuit as "solely an open account collection suit by Premiere against GBR."  (Rec. Doc. 27 at 2).

GBR filed a motion to dismiss the suit for failure to join an indispensable party, namely, Naknek.  (Rec. Doc. 6).  The motion was denied.  (Rec. Doc. 13).  Implicit in the Court's denial of that motion is a finding that, should it ultimately be determined that Premiere is entitled to the relief it seeks, complete relief can be afforded – and the dispute between Premiere and GBR can be completely resolved – without Naknek being made a party to this lawsuit.

After its motion to dismiss was denied, GBR answered the complaint and filed a third-party demand against Naknek (Rec. Doc. 14), alleging that Naknek is "wholly

responsible for any of the alleged monies owed to and sought pursuant to the Complaint filed by Plaintiff."  (Rec. Doc. 14 at ¶ X.)  Naknek has not yet filed an answer.

Instead, on February 7, 2011, Naknek filed a "Notice of Bankruptcy Stay" (Rec. Doc. 19), stating that Naknek filed a voluntary Chapter 11 petition for relief on September 28, 2010 in the United States Bankruptcy Court for the District of Alaska, and that the bankruptcy proceeding "operates as a stay... of... judicial... proceeding[s] against the debtor...."

As to the debtor in bankruptcy, the stay imposed by 11 U.S.C. §362 operates to preclude this case from proceeding against Naknek.  However, pursuant to well-settled jurisprudence, the statutory stay only applies to the debtor, and a co-debtor or co-defendant may only seek the protection of the stay through the exercise of the court's discretionary powers and then only in limited circumstances.[1]  Therefore, since there has been no formal written motion filed, and because GBR took the position that the case was stayed as to it as a matter of law, the undersigned construes GBR's current position as having made an oral motion to stay at the Rule 16 conference and will rule accordingly.

---

[1]    *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544-545 (5th. Cir. 1983), *Reliant Energy Services v. Enron Canada, Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).

<u>A<small>NALYSIS</small></u>

"Once a party files in bankruptcy, under Chapter 11, for example, 11 U.S.C. § 362, *et seq*., stays further actions against the debtor."[2]  This automatic stay is designed to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.[3] The statutory language is clear that the automatic stay applies only to "claims against the debtor," and "Section 362 is rarely... a valid basis on which to stay actions against non-debtors."[4]  There is an exception to that general rule, and proceedings against a non-bankrupt codefendant may be ordered when "such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[5]

GBR argues that there are two reasons why the exception should be applied in this lawsuit to stay the entire action, not just GBR's claim against Naknek.  First,

---

[2]         *Arnold v. Garlock, Inc*., 278 F.3d 426, 436-37 (5th Cir. 2001).

[3]         *Reliant Energy Services, Inc. v. Enron Canada Corp*., 349 F.3d  825, citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985).

[4]         *Arnold v. Garlock*, 278 F.3d at 436, citing *Wedgeworth v. Fibreboard Corp*., 706 F.2d 541, 544 (5th Cir. 1983).

[5]         *Arnold v. Garlock*, 278 F.3d at 436, citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

-4-

GBR contends that, with regard to the subject equipment rental transaction, GBR was Naknek's broker and is not liable for its principal's debt.  Second, GBR contends that Naknek owes GBR contractual indemnity for any amount that GBR might owe to Premiere, making a judgment against GBR a judgment against Naknek.  Finally, GBR argues that, even if it is not entitled to an automatic stay of the entire action under Section 362, it is entitled to a discretionary stay because GBR will be prejudiced if it is required to litigate this lawsuit without Naknek being joined as a party.

With regard to GBR's first contention, it cites Louisiana Civil Code Article 3000 for the proposition that, under Louisiana law, a broker is a mandatary to both parties but is not responsible for the breach by either to the other.  (Rec. Doc. 26 at 7).  However, Article 3000 says that a person *may* be the mandatary of two or more parties, and the comment to the article explains that "[u]nder this provision, depending on particular arrangements, a broker may be a mandatary of the buyer, of the seller, or of both the buyer and the seller." The undersigned finds that GBR has not met its burden of proof to show that a mandatary relationship existed between it and either Naknek or Premiere.

No written mandate agreement between GBR and Naknek was produced, nor was any other document produced that mentions a broker relationship between GBR and either Premiere or Naknek.  In particular, the Master Service Agreement between

-5-

GBR and Naknek contains no such provision.  (Rec. Doc. 26-1).  Quite the contrary, the Master Service Agreement clearly indicates that GBR is a contractor of Naknek who was to perform work "including but not limited to, supplying casing, welding, equipment, and related labor" and only GBR's personnel were permitted to operate the equipment furnished [by GBR] without prior written consent of [GBR].[6]  No other evidence was presented to show when the alleged broker relationship was entered into, the identities of the employees or representative of GBR and Naknek who allegedly confected the alleged agreement in that regard, or the scope of the agreement.

Similarly, no evidence has been presented to establish that GBR disclosed to Premiere that it was a broker with regard to the equipment rental transaction rather than the lessee, when that alleged disclosure was made, or the form in which the disclosure was communicated to Premiere.  GBR has presented no written bid, contract, or proposal for the transaction; no document stating that GBR was Naknek's broker; and no e-mail correspondence between any of the parties stating that GBR was a broker rather than the actual party renting Premiere's equipment.  GBR has not identified an in-person meeting or a telephone conversation in which an employee or representative of GBR notified Premiere that GBR was acting as a broker for Naknek

---

[6]      Rec. Doc. 26-1 p. 1,2.

rather than renting the equipment.  GBR has adduced no evidence establishing that the arrangement between GBR and Naknek required Premiere to invoice Naknek for the rental costs.  Although it has been established that Premiere's president, Lee Matherne, was in Alaska in June 2009, it has not been established that Naknek or GBR disclosed to Mr. Matherne during that visit that GBR was Naknek's broker rather than the direct lessee of Premiere's equipment.  GBR's allegation that Premiere and Naknek discussed shipping arrangements, even if true, does not establish that Premiere rented the equipment to Naknek rather than to GBR or that GBR was a broker to Premiere or Naknek since there is no dispute that the equipment was used on a Naknek job.

On the other hand, Premiere has produced numerous invoices and bills of lading literally all of which indicate that Premiere was directly invoicing GBR.  (Rec. Doc. 1-2, 1-3).  None of those documents even mention Naknek.  It is also persuasive that GBR admitted that it made a partial payment of the invoiced amount to Premiere. (Rec. Doc. 14, ¶ 9).

E-mail correspondence between GBR and Premiere, which was produced by GBR in support of its motion to dismiss for failure to join an indispensable party (Rec. Doc. 11-1) does not establish that there was any other arrangement.  The e-mails establish only that Premiere was willing to negotiate with regard to the amount

of money that it was owed by GBR.  Other than repeatedly stating in its briefs that GBR was a disclosed broker with regard to the subject transaction, GBR has offered insufficient evidence to prove that conclusory allegation.

GBR also argues that, as a broker or mandatary for both parties to the transaction, the other parties became indispensable parties to the lawsuit (Rec. Doc. 26 a 8), ignoring the fact that, if this were so, the district court would not already have ruled that Naknek is *not* an indispensable party to this suit.  In fact, the district court's ruling permits the opposite conclusion:  since Naknek has been determined not to be an indispensable party to this lawsuit, it logically follows that GBR was not Naknek's broker or mandatary.

GBR simply has not proven that its relationship with Premiere was anything other than a lessee of oilfield equipment owned by Premiere and used by GBR on a job for Naknek.  Therefore, GBR has not proven that Naknek rather than GBR owes the unpaid rental payments to Premiere or that the bankruptcy stay should be extended to all claims asserted in this lawsuit.

GBR's second contention is that, if Premiere were to prevail and obtain a judgment against GBR, Naknek is contractually bound to indemnify GBR for that judgment.  In support, GBR relies upon a provision set forth in the Master Service Agreement between GBR and Naknek, which provides that Naknek will indemnify

GBR "from and against any manner of loss, liability, claim, damages, penalty or cost... arising in connection with this agreement... on account of bodily injury, death or loss of or damage to property."  (Rec. Doc. 26-1 at ¶ 9.1)

Whether Premiere's claim for its unpaid invoices even "arises in connection with [the] agreement" is an unsettled question since the Master Service Agreement was entered into *after* Premiere rented the subject equipment to GBR.  The argument that the cited indemnity provision is triggered because Premiere's claim is one for loss of property, is meritless.  Premiere does not allege in its complaint that any of its property was lost or damaged; it alleges that it was not paid a sum that was owed for the rental of equipment.  Even assuming that the Master Service Agreement is applicable at all, the undersigned finds that the cited contractual provision does not require Naknek to indemnify GBR for the amounts sought to be recovered by Premiere in this lawsuit as there is no evidence or even an allegation that there as been any "loss, liability, claim, . . . on account of bodily injury, death or loss of or damage to property."  Furthermore, there is no contractual provision making Naknek responsible to GBR if GBR fails to pay a third-party vendor with whom GBR contracts in connection with work being performed by GBR for Naknek. Consequently, the Master Service Agreement does not create a relationship between GBR and Naknek that makes Naknek responsible for any judgment that Premiere

might obtain against GBR.[7]   Thus, GBR has not established sufficient identity between GBR and Naknek to establish its entitlement to a stay.

Finally, GBR contends that the Court should order a discretionary stay of these proceedings pending resolution of the bankruptcy suit because it will be prejudiced if it is required to litigate the case without Naknek who may be responsible to satisfy a judgment rendered against GBR.   Additionally, GBR contends, without any supporting authority, that until the bankruptcy proceeding is concluded, GBR cannot seek discovery from Naknek or put on testimony by Naknek personnel, impairing GBR's defense of this lawsuit.

Although the Fifth Circuit has recognized that district courts have broad discretionary power to stay proceedings in the interest of justice and to control their dockets, "the requisite balancing of the competing interests"[8] weighs against granting such a stay when the party in bankruptcy is not an indispensable party to the action.[9] In the instant suit, it has already been determined that Naknek is not an indispensable party.  (Rec. Doc.  13).   This is a factor that weighs against extending the stay to

---

[7]        It should also be noted that the Master Service Agreement does not contain any language recognizing GBR as a broker of equipment between Naknek and any third party, including but not limited to Premiere.

[8]        *Wedgeworth v. Fibreboard Corp.*, 706 F.2d at 545.

[9]        *Wedgeworth v. Fibreboard Corp.*, 706 F.2d at 546.

Premiere's claim against GBR.  With regard to the discovery issue, GBR does not explain why it cannot obtain discovery from Naknek in the same way that discovery is routinely obtained from third parties or why GBR could not petition the bankruptcy court for a partial lifting of the automatic stay for the limited purpose of conducting appropriate discovery.  Consequently, GBR has not demonstrated that it will be prejudiced unless a discretionary stay is ordered.  Therefore, the undersigned finds that GBR is not entitled to a discretionary stay.

## CONCLUSION

Any and all claims against Naknek were automatically stayed when the bankruptcy proceeding was initiated.  GBR has not demonstrated that the stay should be extended to apply to Premiere's claims against GBR.  Therefore, for the foregoing reasons:

**IT IS ORDERED** that GBR's motion for a stay of this entire lawsuit pending the resolution of Naknek's bankruptcy proceeding is **DENIED**.

**IT IS FURTHER ORDERED** that GBR provide its inserts to the Rule 26(f) report within 10 days and that all deadlines contained in the Court's scheduling order remain in effect.

Any appeal to the District Judge must be filed within fourteen days from the date of this order.  If an appeal is taken to the District Judge, the Order shall remain stayed until the appeal is decided.

Lafayette, Louisiana, this 11th  day of April 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

-12-